**Keith Altman** (*pro hac vice to be applied for*)
**The Law Office of Keith Altman**
**33228 West 12 Mile Road, Suite 375**
**Farmington Hills, MI 48334**
**(516)456-5885**
**kaltman@lawampmmt.com**

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **JANE DOE,** <br><br>                 **PLAINTIFF,** <br><br> **V.** <br><br> **MOREHOUSE SCHOOL OF MEDICINE, DR. VALERIE MONTOMERY RICE, DR. NGOZI ANACHEBE, MARLA THOMPSON, AND JOHN DOES 1-25** | **COMPLAINT FOR DAMAGES** <br><br><br> <u>**JURY TRIAL DEMANDED**</u> |

**PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, TITLE III OF THE AMERICANS WITH DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT, BREACH OF CONTRACT, NEGLIGENCE, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

NOW COMES Plaintiff, **JANE DOE**, by and through her attorneys, The Law Office of Keith Altman, and for her Complaint against Defendants, hereby states the following:

## BACKGROUND

1.     This action is seeking damages for Defendant's violations of Title VI of the Civil Rights Act of 1964, Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act.  Defendants are also responsible for breach of contract, negligent infliction of emotional distress, and intentional infliction of emotional distress.

2.     Defendants' actions, set forth more fully herein, violate section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §791, *et seq.* , and Title III of the Americans with Disabilities Act (ADA, ADA-AA), 42 U.S.C. §12101, *et seq.*

## PARTIES

3.     Jane Doe is a former student of Morehouse School of Medicine.  She brings this suit anonymously because of fear of reprisal.  Jane Doe is a citizen of Georgia.  Jane Doe has a learning disability, ADHD, which substantially interferes with her ability to learn in a traditional manner.  Learning is a major life activity. Before attending Morehouse, Plaintiff attended Florida State University.  There she

was provided accommodations for her disability which led to the successful completion of her undergraduate education.

4.     Morehouse School of Medicine ("MSM") is a private medical school located in Atlanta, Georgia.  Although a private institution, MSM receives federal funds.  As such, MSM is subject to the dictates of Title VI of the Civil Rights Act of 1964.  MSM is also subject to Title III of the American with Disabilities Act and Section 504 of the Rehabilitation Act.

5.     Dr. Valerie Montgomery Rice is the president of MSM.  As the president of MSM, Dr. Montgomery Rice, was responsible for the actions of her subordinate staff.  She directly interacted with Plaintiff as part of Plaintiff's dismissal from MSM and acted in violation of Plaintiff's rights under Title VI of the Civil Rights Acts of 1964, Title III of ADA, and Section 504 of the Rehabilitation Act.  Furthermore, Montgomery Rice acted negligently in her approving of Plaintiff's dismissal from MSM which also breached the Plaintiff/MSM contract.

6.     Dr. Ngozi Anachebe is MSM's associate dean of medical education, admissions, and student affairs. She directly interacted with Plaintiff as part of Plaintiff's dismissal from MSM and acted in violation of Plaintiff's rights under Title VI of the Civil Rights Acts of 1964, Title III of ADA, and Section 504 of the Rehabilitation Act.  Furthermore, Anachebe acted negligently in approving Plaintiff's dismissal from MSM which also breached the Plaintiff/MSM contract.

Lastly, Anachebe intentionally inflicted emotional distress on Plaintiff through her abusive and outrageous conduct towards Plaintiff.

7.     Marla Thompson is MSM's Title IX Coordinator.  During the relevant period, she was the acting manager of MSM's Office of Disability Services.  During the relevant period, Thompson was responsible for ensuring MSM's compliance with ADA and Section 504.  She routinely failed to ensure that Plaintiff received necessary and reasonable accommodations for her learning disability.

## JURISDICTION & VENUE

8.     This action arises under the laws of the United States, and therefore this Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question).

9.     This action arises under the following federal statutes: The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, at Title III of the ADA, prohibits discrimination in the provision of public services. Section 202 of the Act, 42 U.S.C. §12132 (Supp.1991), the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C.A. §§794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and §504 prohibit retaliation against persons with disabilities.

10. As a recipient of federal funds, MSM is also subject to Title VI of the Civil Rights Act of 1964.

11. In accordance with 28 U.S.C. § 1367, this Court also has supplemental over Plaintiff's state law claims for breach of contract, negligent infliction of emotional distress, and intentional infliction of emotional distress because these claims are related to the federal question claims listed above and the state law claims are part of the same controversy as the federal claims.

12. This action is properly venued in the Atlanta Division of the Northern District of Georgia because MSM and the individual defendants are located within the division and a significant portion of the events occurred within the division.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

13. Morehouse School of Medicine ("MSM") is a private medical school located in Atlanta, Georgia, and was founded in 1975.

14. At all relevant times for this lawsuit, the president of MSM is Defendant Valerie Montgomery Rice, M.D.

15. MSM's student population is predominantly African American.

### Jane Doe's Disability

16. Plaintiff was diagnosed with ADHD in the Spring of 2011 while attending Florida State University. She began receiving pharmacological treatment at that time.

17. During her time at FSU, Plaintiff was provided with accommodations.

18.     Once having been diagnosed and provided accommodations, Plaintiff was able to successfully complete her undergraduate degree in 2014.

### Jane Doe's Experience at MSM

19.     After she graduated from Florida State University, Plaintiff took off one year and then enrolled in MSM.

20.     On matriculation at MSM, Plaintiff did not immediately seek accommodations for her learning disability because it appeared to her that the ADHD was under control.  Unfortunately, Plaintiff was not correct.

21.     In September of 2015, Plaintiff was failing her classes as she did not have any accommodations at that time.  After meeting with her course advisor, she was provided with time and a half for exams and a non-disruptive testing environment.

22.     While Plaintiff was on medication for ADHD, she was still having difficulties and her medication levels needed to be adjusted.  She spent much of her first year working closely with physicians to determine an adequate therapeutic dosage and combination of medications.

23.     Although she ultimately passed the first year, because of her low overall grades, she was decelerated for her second year.  In effect, she would take two years to complete the second year of medical school.

24.     Plaintiff was the only student in her class forced to decelerate before the second year started.  Although there were other individuals with performance difficulties comparable to hers, she was the only student forced to decelerate.

25.     In fact, Plaintiff passed every one of her mini-board exams (NBME subject exams) while other students failed some of them.  Yet as discussed above, Plaintiff was the only student forced to decelerate.

26.     MSM's action decelerating Plaintiff when she had been successful on the mini boards was inconsistent with MSM's own beliefs.  In 1996, Morehouse published a paper that said passing the NBME exams was a better predictor of success in the program than Morehouse specific exams.

27.     To demonstrate, Plaintiff failed the renal, pulmonary, and histology portions of her in-class exams, yet she scored above average on the NBME exams.

28.     When forcibly decelerating Plaintiff, Morehouse failed to consider the impact her known disability had on her performance the first year and how it would impact the deceleration schedule.

29.     Although the second year deceleration schedule is generally fixed, the schedule can be altered.  "Depending on personal circumstances, the Associate Dean of Student Affairs can approve alternative course structures.[1]"  No attempt was made

---

[1] 2017-2018 MSM Student Handbook, p. 96

by Morehouse to meet with Plaintiff to discuss the best course of action in light of her disability.

30.     Before starting her second year at MSM, Plaintiff contacted Defendant Marla Thompson who was the acting disability coordinator.  Despite multiple email attempts that were known to be received by Thompson, it took more than a month for Plaintiff to receive her accommodations- well after the semester started.  This delay meant that Plaintiff did not receive her accommodations for 2 of the 3 exams in that section of the curriculum.

31.     Even when being granted accommodations, MSM failed to provide those accommodations in an effective and meaningful manner.

32.     For more than one year, Plaintiff and other students with accommodations complained to MSM that the testing conditions made available were not conducive to disability accommodations.  For example, the test proctors would often watch movies with headphones or would have conversations with random individuals.  The rooms were often in high traffic areas of campus leading to extraneous noise.  After complaints from many students, the testing conditions were improved, but the damage had already been done and even with the adjustments, problems continued

33.     At the start of the second half of year two (Plaintiff's year 3), Plaintiff met with her advisor Dr. Knight who advised her to contact  Marla Thompson at

the office of disability services early on "because she took forever to get back to you".  Dr. Knight also told Plaintiff that many MSM people were aware of the problems students faced when seeking help from the office of disability services

34.    Dr. Knight tried to advise Plaintiff as best she could, but after several meetings, she told Plaintiff she'd never dealt with a student like Plaintiff and didn't know how to help her.  Dr. Knight was referring to a student with ADHD.

35.    Plainitff emailed Defendant Marla Thompson her intake packet requesting accommodations before starting classes.  When Plaintiff submitted the packet, she thought her classes were going to be similar to the year before where attending lectures would be more or less optional, so when she submitted her initial request for accommodations, she thought extended time on her exams and an alternate testing room would be sufficient.

36.    From the time Plaintiff first emailed Marla Thompson the intake packet until Thompson was ready to meet with Plaintiff over three weeks had passed,  more than enough time for Plaintiff to realize that she couldn't keep up with the lectures and needed a note-taker.  Plaintiff requested a note-taker as an accommodation.

37.    MSM denied Plaintiff's request for a note-taker despite being aware that during Plaintiff's time at Florida State, she had been provided with a note-taker.

38.     Plaintiff stopped attending lectures because she was unable to pay attention to the lecture, take notes, and then review the lectures, all due to her disability.  Plaintiff explained this to MSM staff and was still denied reasonable accommodations.  Even though she did not attend the lectures, she used that time to review the materials as best she could.

39.     During that year, Plaintiff did progressively worse and ultimately failed her classes because Defendants did not provide her with proper accommodations.

40.     Because of her failing classes, MSM sought to dismiss Plaintiff from the university.

41.     During the proceedings in which Plaintiff was dismissed from MSM, Plaintiff met with Dr. Elks who asked her why she didn't just request a transcript of the lectures.  This was a service available to all students without the need to go through the office of disability.  Plaintiff told Dr. Elks that she didn't know this service existed and asked why it had never been mentioned to her, especially since she had brought up the issue of needing a notetaker months previously.  Dr. Elks was copied on the email requesting the accommodation.

42.     Although Dr. Elks stated that the transcripts probably wouldn't have made a difference because they didn't work for *her* and therefore didn't find them useful.  Plaintiff tried to explain that they definitely would have worked for her given

her disability and that she learned much better from reading and even better when having the option to both listen and read the notes.

43.     At the final meeting between Plaintiff and MSM, Defendant Montgomery Rice asked Plaintiff how long MSM had known about her disability. Plaintiff responded that MSM had known of the disability since the first year. Defendant then told Plaintiff that "it was the school's job to protect patients from incompetent doctors like you" and continued by saying something along the lines of "how can we know you'd do well without the accommodations in the emergency room or operating room".  Such statements demonstrate Defendants' bias towards Plaintiff because of her disability.

44.     Plaintiff was dismissed from MSM and exhausted her appeals in July 2018.

## Respondeat Superior And Agency

45.     Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-9 of his Complaint in their entirety.

46.     Defendants Dr. Valerie Montomery Rice, Dr. Ngozi Anachebe, Marla Thompson, and John Does 1-25 committed the acts described in this complaint while in the course and scope of their employment and/or agency with MSM.

47.     Under Georgia law, the acts of a servant are the acts of the master, and, thus, MSM is responsible for the negligent and wrongful acts of Defendants Dr.

Valerie Montgomery Rice, Dr. Ngozi Anachebe, Marla Thompson, and John Does 1-25.

48.     Georgia law places a duty on a business owner, by an owner's implied invitation to customers, to protect customers against a willful and intentional tort committed by an employee of the business owner when the employee commits a tort at the direction of the business owner or in the execution and scope of the owner's business.

49.     Every person shall be liable for torts committed by a servant by his command or in the prosecution and within the scope of his business, whether the same is committed intentionally or negligently.

50.     Under Georgia law, an employer is responsible for torts committed by his employee when the employee does not exercise an independent business and is subject to the immediate direction and control of the employer.

### FIRST CAUSE OF ACTION
### Violation of Title VI of the Civil Rights Act of 1964
### (Against All Defendants)

51.     Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-5050 of her Complaint in their entirety.

52.     Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. 2000(d), prohibits institutions receiving Federal assistance from discrimination based on race,

color, or national origin. MSM is such an institution and its conduct against the Plaintiff allegedly violates Title VI as follows.

53.     MSM's student population is predominantly African American (74%). Hispanic students such as Plaintiff comprise only 4.4% of the students[2].

54.     At all relevant times, Defendants were aware that Plaintiff was Hispanic.

55.     There was a pattern of discrimination against Plaintiff because she was Hispanic.

56.     While several students in Plaintiff's class year were having academic difficulties, those who were African American were provided additional support which was not made available to Plaintiff.

57.     African American students with difficulties garnered more attention from faculty in assisting them with their studies than Plaintiff.

58.     For example, before the Fall 2018 Semester began, academically challenged African American students were contacted before the semester began for academic support.  Plaintiff was not contacted.

59.     Plaintiff was made to feel different because of her race.

60.     MSM's actions or inactions as described above were intentional and motivated by Plaintiff's race and for no other legitimate purpose.

---

[2] https://www.univstats.com/colleges/morehouse-school-of-medicine/student-population

61.   By the foregoing, Defendant MSM engaged in intentional discrimination based on the race of Plaintiffs by providing academic support services to African American students that were not made available to her.

62.   Defendant MSM created, facilitated, or allowed to continue a racially discriminatory environment and school environment hostile to Hispanic students such as Plaintiff as evidenced by Administrators who permitted, condoned, and tolerated differential treatment of students with academic difficulties based on their race and/or national origin and which effectively deprived Plaintiff of equal access to educational opportunities at MSM.

63.   As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff has sustained and continues to sustain injuries and damages.

## SECOND CAUSE OF ACTION
### Violation Title III ADA
### (Against All Defendants)

64.   Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-50 of her Complaint in their entirety.

65.   Plainitff suffers from a learning disability as a result of being diagnosed with ADHD.

66.   Plaintiff has a serious medical need, ADHD, and is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

67.   The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

68.   At all relevant times, Defendants were fully aware of Plaintiff's disability.

69.   Plaintiff has been denied reasonable accommodations for her documented learning disability.

70.   As a result of Defendants' denial of reasonable accommodations to Plaintiff, Defendants violated the ADA by discriminating against Plaintiff in several ways, including without limitation, the following:

a.   Failing to recognize that Plaintiff had a learning disability due to ADHD.

b.   Failing to provide additional time for test-taking.

c.   Failing to provide a note-taker during lectures.

d.   Failing to provide counseling to Plainitff to assist with her disability.

e.   Denying Plaintiff the equal/same opportunity to receive an education as a medical student as those without a disability.

71.   Defendants have discriminated against Plaintiff by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1).

72.     Defendants' inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

73.     As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff has sustained and continues to sustain injuries and damages.

### THIRD CAUSE OF ACTION
### Violation section 504 of the Rehabilitation Act
### (Against All Defendants)

74.     Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-50 of her Complaint in their entirety.

75.     Section 504 of the Rehabilitation Act, 29 U.S.C § 794, bars all federally funded entities (governmental or otherwise) from discriminating based on disability. Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

> 29 U.S.C. § 794(a).

76.     Defendant MSM receives federal financial assistance and is covered by Section 504.

77.     Plaintiff has a learning disability, ADHD, which interferes with her ability to learn.  Learning is a major life activity.  Thus, ADHD limits at least one of Plaintiff's major life activities.

78.     Because ADHD substantially limits at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the Rehabilitation Act.

79.     Plaintiff has a demonstrated history of success as a student when she is provided accommodations commensurate with her ADHD.

80.     The Rehabilitation Act and its implementing regulations require that Defendants administer programs/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. § 41.51 and 45 C.F.R § 84.4.

81.     Plaintiff has been denied and excluded from the benefits of Defendants' educational program because Defendants have failed to make reasonable accommodations that meet Plaintiff's needs.

82.     In further violation of Section 504, Defendant Montgomery Rice told Plaintiff that "it was the school's job to protect patients from incompetent doctors like you" and continued by saying something along the lines of "how can we

know you'd do well without the accommodations in the emergency room or operating room".

83.    As a result of Defendants' denial and exclusion of Plaintiff from receiving reasonable accommodations commensurate with her ADHD, Defendants violated the Rehabilitation Act by discriminating against them in several ways, including without limitation, the following:

a.    Failing to recognize that Plaintiff had a learning disability due to ADHD.

b.    Failing to provide additional time for test-taking.

c.    Failing to provide a note-taker during lectures.

d.    Failing to provide counseling to Plaintiff to assist with her disability.

e.    Denying Plaintiff the equal/same opportunity to receive an education as a medical student as those without a disability.

84.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and will continue to sustain injuries and damages.

## FOURTH CAUSE OF ACTION
### Breach of contract
### (Against MSM)

85.     Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-50 of her Complaint in their entirety.

86.     Plaintiff and Defendant MSM entered into a contract by which Defendant offered admission to MSM to Plaintiff and for which Plaintiff accepted MSM's offer and attended MSM.

87.     There was a mutual exchange of consideration by which Plaintiff attended the university involving payments and expenditure of time and MSM made its services available to Plaintiff including educational opportunities.

88.     As part of the contract was the existence of policies set forth MSM.  As a condition of attending MSM, Plaintiff and MSM were both expected to be bound by those policies.  Included within those policies were policies concerning disability services.  These policies were part of the bargain between Plaintiff and MSM.  Without agreeing to abide by those policies, Plaintiff would not have been permitted to attend MSM.

89.     Defendant MSM breached the contract as discussed more fully within this complaint by not properly providing Plaintiff with services related to her disability.

90.     As a result of Defendant MSM's breach of the contract, Plaintiff has been damaged in that she has been forced to expend significant time and resources defending her continued attendance at MSM despite not having been provided the

services for her disability that MSM was required to provide under federal law and the contracted for policies of MSM.  Plaintiff is further saddled with substantial debt to MSM through student loans.

91.    Furthermore, Plaintiff's ability to attend a different medical school has been impaired by MSM's breach of contract.


### FIFTH CAUSE OF ACTION
### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

92.    Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-50 of her Complaint in their entirety.

93.    Defendants breached their duty of reasonable care by negligently acting or omitting to act in such a way that resulted in Plaintiff's wrongful dismissal from MSM, which these Defendants knew or should have known posed a substantial risk of harm to Plaintiff.

94.    Defendants were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

      a. Recognizing Plaintiff's need for accommodations for her learning disability;

b. Properly reviewing Plaintiff's needs for accommodations for her learning disability;

c. Failing to provide Plaintiff with proper accommodations for her learning disability;

d. Creating and/or sanctioning policies, patterns, practices, and customs of not properly providing reasonable accommodations to those with learning disabilities.

e. Failing to adequately train and supervise MSM personnel to properly evaluate and provide reasonable accommodations to those with learning disabilities.

95.     By their negligent conduct, the Defendants have inflicted extreme and severe emotional distress on Plaintiff, who is confronted with an inability to complete her medical education, practice her chosen profession, earn a living, provide for her family, and to pay her mounting student loan debts. She has suffered direct financial losses due to Defendants' conduct for the above items.

96.     While attending MSM, because Plaintiff was not provided accommodations she was entitled to, she would suffer from insomnia and often go days without sleeping. These episodes led to significant stress and anxiety.

97.     As a result of Defendants' conduct, Plaintiff has suffered stress resulting in panic and anxiety attacks as well as suicidal ideation.

98.    Plaintiff sees a therapist and is being treated for symptoms akin to post-traumatic stress disorder (PTSD).  She is required to pay for these services.

99.    Even being in the vicinity of Morehouse causes such a visceral reaction to Plaintiff that she avoids the area at all costs.

100.   The growing emotional, psychological, and physical distress that the Plaintiff has suffered was caused directly and proximately by the Defendants' negligent conduct.  Furthermore, Plaintiff suffers and continues to suffer financial losses due to Defendants' negligent conduct.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (AGAINST ALL DEFENDANTS)

101.   Plaintiff incorporates by reference as if fully stated herein, Paragraph Nos. 1-50 of her Complaint in their entirety.

102.   By their intentional and wanton conduct, the Defendants have  inflicted extreme and severe emotional distress on Plaintiff, who is confronted with an inability to complete her medical education, practice her chosen profession, earn a living, provide for her family, and to pay her mounting student loan debts.

103.   While  attending  MSM,  because  Plaintiff  was  not  provided accommodations she was entitled to, she would suffer from insomnia and often go days without sleeping.  These episodes led to significant stress and anxiety.

104.   As a result of Defendants' conduct, Plaintiff has suffered stress resulting in panic and anxiety attacks as well as suicidal ideation.

105.   Plaintiff sees a therapist and is being treated for symptoms akin to post-traumatic stress disorder (PTSD).

106.   Even being in the vicinity of Morehouse causes such a visceral reaction to Plaintiff that she avoids the area at all costs.

107.   The growing emotional, psychological, and physical distress that the Plaintiff has suffered was caused directly and proximately by the Defendants' intentional and wanton conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that this Court grant them relief as follows:

(1) Compensatory damages for financial loss, damage to reputation, humiliation, mental anguish, and emotional distress;

(2) Punitive damages against the individual defendants;

(3) Attorneys' fees;

(4) Costs of the suit;

(5) Injunctive relief; and

(6) Such other relief as the Court may deem proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Date: June 30, 2020

Respectfully Submitted,

*/s/Keith Altman*
Keith Altman (*pro hac vice to be applied for*)
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com